**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICKIE SLAUGHTER,

        Plaintiff,

v.

MELISSA TRAVIS, *et al.*,

        Defendants.

3:16-cv-00599-RCJ-CBC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

This case involves a civil rights action filed by Plaintiff Rickie Slaughter ("Slaughter") against Defendants Melissa Travis, Harold Byrnes, Sommer Westbay and Gary Gonzales (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendants. (ECF No. 21.) Slaughter opposed the motion, (ECF No. 27), and Defendants replied. (ECF No. 29.) Having thoroughly reviewed the record and papers, the Court hereby recommends that Defendants' motion for summary judgment be granted.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    **A.    Procedural History**

Slaughter is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at Ely State Prison ("ESP") in Ely, Nevada. (ECF No. 6.) Proceeding *pro* se, Slaughter filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging various claims against Defendants. (*Id.*)

Pursuant to 28 U.S.C. § 1915A(a), the Court screened Slaughter's complaint on March 27, 2018. (ECF No. 5.) The Court determined the following claims stated a

---

[1] This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

cause of action: (1) the portions of Count II alleging retaliation in violation of the First Amendment against Defendants Westbay and Travis; and, (2) Count IV alleging retaliation in violation of the First Amendment against Defendants Travis, Byrnes, and Gonzales. (*Id.*)

### B. Facts Related to First Amendment Retaliation – Count II

On December 2, 2015, Slaughter was working in the culinary unit at ESP. (ECF No. 6 at 5.) While working, Slaughter alleges he was burned on a hot pipe. (*Id.* at 5-6.) Slaughter alleges Defendants Westbay and Travis worked in a "concerted effort" to retaliate against Slaughter for threatening to file, and later filing, grievances against Westbay and others based on the incident. (*Id.* at 11-16.) Specifically, Slaughter alleges Westbay refused to permit Slaughter outdoor recreation or the opportunity to use the gymnasium at ESP. (*Id.* at 11.) He goes on to allege that when he requested an emergency grievance form from Westbay, in order to complain of the retaliation, she told Slaughter she would have him fired from his job in culinary, which would result in Slaughter being rehoused to a lock-down unit. (*Id.* at 11-14.) Furthermore, Slaughter alleges after he turned grievances into Westbay, she told Slaughter he was being sent to the infirmary and had been unassigned from his job. (*Id.* at 12-13.) Subsequently Travis issued a disciplinary report charging Slaughter with "G14 failure to follow rules and regs" and "MJ52 failure to participate" wherein Travis claimed Slaughter had failed to report for work. (*Id.*)

### C. Facts Related to First Amendment Retaliation – Count IV

Next, Slaughter alleges Defendants retaliated against him for filing a grievance by denying him reassignment to the culinary job, thus keeping him in lock-down. (*Id.* at 20-23.) Slaughter alleges on April 21, 2016, a non-party officer filed disciplinary charges against Slaughter, resulting in him losing his culinary job and being transferred out of the workers' unit and back into an administrative segregation lock-down unit. (*Id.* at 20.) He alleges on May 1, 2016, he was exonerated by a non-party officer, who told Slaughter that he would be transferred back to the workers' unit within a couple weeks. (*Id.*) He

goes on to allege that when he brought the issue up with Travis, Travis told Slaughter that Byrnes wanted to talk to Slaughter first. However, when Slaughter tried to talk to Byrnes, he claimed not to know what Slaughter was talking about. Later Travis told Slaughter she would be putting a case note indicating poor work performance into the computer. (*Id.* at 21-22.) Slaughter alleges in a subsequent meeting with Travis and Byrnes, Slaughter asked for his job and Travis told Slaughter he was unemployable because of his issues with the culinary supervisors Gonzales and Shaw. (*Id.* at 22.)

Slaughter goes on to allege that on a later date his cellmate was offered a job by culinary supervisor Gonzales, who asked if his cellmate would also like a job, but when Slaughter's cellmate identified Slaughter, Gonzales said Slaughter could not have a job because he had filed grievances against Gonzales. (*Id.* at 23.)

### D. Defendants' Motion for Summary Judgment

On November 13, 2018, Defendants filed a motion for summary judgment. (ECF No. 21.) In the motion, Defendants argue: (1) the claims against Defendants Travis, Byrnes, and Gonzales in Count IV are barred by the Prison Litigation Reform Act ("PLRA"), because Slaughter failed to exhaust his administrative remedies; (2) Defendants Travis and Westbay did not retaliate against Slaughter as there were legitimate penological reasons for removing Slaughter from his culinary job; and, (3) Defendants are entitled to qualified immunity. (*Id.* at 1-15.)

In response, Slaughter filed a motion in opposition arguing that summary judgment is inappropriate because: (1) the claims against Defendants Travis and Gonzales in Count IV were exhausted, because the grievances sufficiently notified the prison of the retaliation[2]; (2) he has submitted evidence demonstrating a dispute of material issues of fact regarding similarly situated inmates who were not barred from participating in "outside exercise or gym," and Defendants Westbay's and Travis' collaborative efforts to retaliate against Slaughter for filing grievances; and, (3) he needs

---

[2] The Court notes that Slaughter does not address exhaustion as it pertains to Defendant Byrnes.

3

an opportunity to conduct discovery, thus he requests a continuance of the motion for summary judgment.[3] (ECF No. 27 at 1-8.)

In reply, Defendants reiterate their prior arguments. In addition, Defendants argue: (1) Slaughter failed to address the argument that his claims in Count IV are barred by the PLRA, and the grievances Slaughter submitted did not put the prison on notice; (2) Slaughter had not created a genuine issue of fact regarding Defendant Travis' because his assertion that other similarly situated inmates are allowed to participate in outside recreational exercise and visit the gym is not based on personal knowledge, and is not supported by the verified complaint or other documents filed in this matter; and, (3) Slaughter does not address the argument that Defendant Westbay unassigned Slaughter from culinary due to his pending notice of charges. (ECF No. 29 at 1-11.)

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements,

---

[3] Under Federal Rule of Civil Procedure 56(d) a non-moving party must demonstrate through an affidavit or declaration that it does not have sufficient facts to justify its opposition, thus allowing the court to defer consideration of the motion or deny it, allow time for discovery, or issue another appropriate order. The party seeking a Rule 56(d) continuance bears the burden of proffering facts sufficient to satisfy its requirements. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). Slaughter has not made a formal request under Rule 56(d) nor has he provided a declaration or affidavit attesting to this issue. Therefore, the Court will not address the request for a continuance of the motion for summary judgment.

4

speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

5

Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. DISCUSSION

#### A. Failure to Exhaust Claims Against Defendants Byrnes, Gonzales and Travis

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust all available administrative remedies before filing "any suit challenging prison conditions." 42 U.S.C. § 1997e(a). Failure to properly exhaust all available administrative remedies as required by the PLRA is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed. 2d 798 (2007). Once a defendant proves there was an available administrative remedy the inmate did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Nonetheless, the ultimate burden of proof remains with the defendant. *Id.*

In *Woodford v. Ngo*, the United States Supreme Court held that the PLRA's exhaustion requirement requires *proper* exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93, (2006) (emphasis added). Proper exhaustion means that the inmate must comply with the prison's "deadlines and other critical procedural rules" and properly use "all steps that the [prison] holds out," so that the prison is given an opportunity to address the

6

1  issues on the merits.  *Id.* at 90-91 (internal citation and quotation omitted).  The PLRA's
2  proper exhaustion requirement is mandatory; exhaustion is only excused if
3  administrative procedures are not available.  *Ross v. Blake*, 136 S.Ct. 1850, 195 L.Ed.
4  2d 117 (2016) (holding that a court may not excuse an inmate's failure to exhaust
5  administrative remedies before bringing suit under the PLRA, even to take "special"
6  circumstances into account).

7        The Nevada Department of Corrections has a three-level grievance process.
8  *See* AR 740.  An inmate begins this process by filing an informal grievance.  *Id.*  An
9  inmate can appeal the prison's response to his informal grievance by filing a first-level
10  grievance.  *Id.*  To exhaust, the inmate must also appeal the prison's first-level response
11  by filing a second-level grievance.  *Id.*

      **1.      Defendants Byrnes and Gonzales – Count IV**

13        Defendants argue that Slaughter never filed a grievance addressing the alleged
14  retaliation by Defendants Byrnes and Gonzales.  (ECF No. 21 at 11-12).  Slaughter
15  wholly ignores Defendants argument as to Defendant Byrnes and insists that grievance
16  #2006-30-13671 was sufficient to place the prison of notice "of Gonzales['] intent to stop
17  [Slaughter's] employment in the culinary due to his [First] [A]mendment activities."
18  (ECF No. 27 at 6).

19        Having reviewed the record, there is no evidence that Slaughter ever filed a
20  grievance alleging Defendant Byrnes violated Slaughter's constitutional rights.  Turning
21  now to grievance #2006-30-13671, Slaughter's factual allegations were not sufficient to
22  put Defendants on notice that he was complaining about Defendant Gonzales' alleged
23  retaliation.  (*See* ECF No. 27 at Ex. C).  While an inmate need not articulate a precise
24  legal theory to properly exhaust under the PRLA, a grievance only suffices if it alerts the
25  prison to the nature of the wrong which redress is sought.  *Griffin v. Arpaio*, 557 F.3d
26  1117, 1120 (9th Cir. 2009).  Slaughter's grievance did not put Defendants on notice of
27  Slaughter's First Amendment retaliation claim against Defendant Gonzales.  (ECF No.
28  27 at Ex. C).  Slaughter's grievance states that he was injured while working in culinary

and "[warden] Baker [and] culinary supervisors are fully aware that culinary workers at ESP are not put through legitimate training programs" and that "[warden] Baker is engaged in a civil conspiracy with . . . Gonzales . . . to shield NDOC and staff (including themselves) from potential future civil liability in later civil rights lawsuits, for their gross negligence and deliberate indifference (cruel and unusual punishment)." (*Id.*) The complaints in Slaughter's grievance form did not adequately alert Defendants as to Slaughter's present factual allegations. Therefore, Slaughter failed to exhaust his claims as to Defendants Byrnes and Gonzales as contained in Count IV. Accordingly, the claim against Defendants Byrnes and Gonzales should be dismissed.

### 2.     Defendant Travis – Count IV

Defendants argue that Slaughter failed to properly grieve his claim in Count IV that Defendant Travis wrote a false case note in retaliation for Slaughter exercising his first amendment rights. (ECF No. 21 at 11-12.) Specifically, Defendants allege that the first time Slaughter raises the issue is in the first level of grievance #2006-30-24362. (*Id.*) Slaughter argues that the basic premise of grievance #2006-30-24362 was to notify the prison that Defendant Travis "was refusing to re-employ [Slaughter] and thereby restore his custody-level." (ECF No. 27 at 5.) In the alternative, he argues that because NDOC officials ignored "any potential procedural defect stemming from the updated fact," he has properly exhausted the available administrative remedies. (*Id.* at 5-6.)

As to Slaughter's retaliation claim regarding the false case note, because he added a new issue after he submitted the initial appeal, Slaughter's first level grievance responders considered the merits of his grievance despite Slaughter's failure to comply with procedural requirements. (ECF No. 21 at Ex. J). "[A] prisoner exhausts such administrative remedies as are available . . . under the [PLRA] despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (citation and internal

quotation marks omitted); *see also Mcclure v. Chen*, 246 F.3d 1286, 1291 (9th Cir. 2017). Additionally, Slaughter satisfied the second level grievance requirement. (ECF No. 21 at Ex. J). Therefore, the claim against Defendant Travis in Count IV may proceed.

### B. First Amendment Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 4-8 F.3d 559, 567-68 (9th Cir. 2005).

Federal courts were not created to supervise prisons, but to enforce the constitutional rights of all persons, including prisoners. "We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1982). But prisoners, like other individuals, have the right to petition the government for redress of grievances, which includes the First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances . . .'" *Rhodes*, 408 F.3d at 567 (quoting *Bruce v. Yist*, 351 F.3d 1283, 1288 (9th Cir. 2003)). "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

Prison regulations that infringe a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 96 L.Ed. 2d 64, 107 S.Ct. 2254 (1987); *Casey v. Lewis* 4 F.3d 1516, 1520 (9th Cir. 1993). The Supreme Court has identified four factors to consider when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it; (2) the existence of "alternative means of exercising the right available to inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and, (4) "the absence of ready alternatives available to the prison for achieving the governmental objectives." *Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009) (internal citations omitted).

### 1. Protected Right

Slaughter's First Amendment retaliation claim is based on his right to petition the government for redress of his grievances. (ECF No. 6.) A prisoner's First Amendment right to meaningful access to the courts, along with his broader right to petition the government for a redress of his grievances, extends to established prison grievance procedures. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citing to *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)). Accordingly, Slaughter was engaging in protected First Amendment activity by filing grievances and complaining that he lost his culinary job as a result of NDOC staff retaliating against him.

### 2. Retaliation and Legitimate Penological Interest

In order to prevail on a retaliation claim based on this protected right, Slaughter must also prove that Defendants retaliated against him for exercising this right. Defendants' true motivation in removing Slaughter from his culinary job is disputed. To support their argument that Slaughter was removed due to pending notice of charges, violating his medical lay-in order and having bad work performance, Defendants point to: (1) inmate grievance history; (2) disciplinary forms; (3) case notes; (4) historical bed

10

assignments; (5) Administrative Regulation ("AR") 507; and, (6) classification change sheets. (ECF No. 21 at 12-13; Exs. A, D, E, F, G, and I).

### a. Defendants Travis – Disciplinary Report

"A medical lay-in is a doctor's written order confining an inmate to his or her housing unit with the exception of receiving meals, medication, and attending sick-call." *Leos v. Rasey,* 2018 U.S. Dist. LEXIS 15966 *9, n. 2, 2018 WL 646125 (E.D. Cal. Jan. 30, 2018). Defendant Travis was aware Slaughter was on medical lay-in and asked him to return to his cell after he was found playing cards with other inmates during open tier time. (ECF No. 21 at Exs. A, F.) When Slaughter refused to comply, Defendant Travis wrote Slaughter up on disciplinary charges. (*Id.*) Although Slaughter argues that he did not know he was on medical lay-in and that he has observed inmates on medical lay-in be allowed to participate in recreation activities, gym, and walk to get their meals, (ECF No. 27 at Ex. A), there is no evidence that Defendant Travis knew of either fact. Rather, the evidence shows that Defendant Travis sought to follow the basic requirements of a medical lay-in and return Slaughter to his housing unit in accordance with the medical lay-in.

Maintaining prison order and keeping track of the whereabouts of all inmates are legitimate penological goals. *See Procunier v. Martinez*, 416 U.S. 396, 412-13, 94 S.Ct. 1800, 40 L.Ed. 2d 224 (1974) *limited by Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed. 2d 459 (1989). Slaughter fails to offer any evidence that Defendant Travis' action in writing Slaughter up for disciplinary charges did not reasonably advance a legitimate penological goal, and only offers the theory that the write up was in retaliation for filing past grievances. (*See generally* ECF No. 27.) Even if Defendant Travis had retaliated against Slaughter based on his right to petition the government for redress of his grievances, "a prison regulation or prison official's retaliatory actions may impinge on a prisoner's constitutional rights so long as they are reasonable related to legitimate penological interests." *See Bradley*, 64 F.3d 1279-80, quoting *Turner*, 482

U.S. 89-90.  Accordingly, this Court recommends that summary judgement be granted as to the first retaliation claim against Defendant Travis.

### b. Defendant Travis and Byrnes[4] – Case Note

"Preserving institutional order, discipline, and security are legitimate penological goals." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1995).  The record shows that on June 28, 2016, Slaughter met with Defendants Travis and Byrnes.  (ECF No. 6 at 21-22; *see also* ECF No. 21 at 13).  At this meeting Slaughter asked for his job back.  (ECF No. 6 at 21-22).  Slaughter alleges that Defendants told him he was unemployable and that they would put a false case note in the computer stating he had bad work performance.  (*Id.*; *see also* ECF No. 27).  However, the evidence shows that on June 28, 2016, Defendants Travis and Byrnes informed Slaughter that he could not return to his culinary job because "[i]nmate currently has a section A score of 10 which disqualifies transfer consideration [to worker's unit]."  (ECF No. 21 at Ex. D).  The case note goes on to state that "[i]nmate was informed he currently did not qualify for transfer [to the worker's unit] due to his violent disciplinary for assaulting another inmate which cause his section A score to be elevated for five years."  (*Id.*)  Although his "poor work performance" is mentioned, it does not appear to be the primary reason why Slaughter was not returned to his job in culinary.  Rather, it appears that Defendants Travis and Byrnes were motivated to preserve institutional order, discipline, and security by maintaining Slaughter's section A score instead of overriding it.  Thus, even if Defendants Travis and Byrnes denied Slaughter his culinary job as retaliation, the denial was reasonably related to a legitimate penological interest. *See Bradley*, 64 F.3d 1279-80, quoting *Turner*, 482 U.S. 89-90.  Accordingly, this Court recommends that summary judgement be granted as to the retaliation claims against Defendants Travis and Byrnes.

---

[4]  Both Defendants and Slaughter fail to address Byrnes, however the Court will consider him herein.

### c. Defendant Westbay – Unassigned from Culinary

Medical lay-in requires that an inmate be confined to their housing unit with limited exceptions. *Leos*, 2018 U.S. Dist. LEXIS 15966 *9, n. 2. Outside recreation and gym are not within those exceptions. *Id.* Although Slaughter argues that Defendant Westbay refused to allow Slaughter to go out for recreation or gym in retaliation for a prior grievance he filed against Defendant Westbay, Slaughter has failed to provide any evidence of this. According to Slaughter's own account of the events, Defendant Westbay told Slaughter "that since medical was granting me leave from work, that I was not allowed to come out of my cell for any activities," Westbay went on to explain "that [i]nmates that get leave from work from medical can't come out of their cells and that [Slaughter] need[ed] to return to [his] cell." (ECF No. 21 at Ex. K 003). As such, there is no issue of material fact on this issue.

Defendant Westbay appropriately followed medical lay-in regulations. Even if he was partially motivated by retaliation, his actions were reasonably related to the legitimate penological interest of maintaining prison order and keeping track of the whereabouts of all inmates. *See Bradley*, 64 F.3d 1279-80; *Procunier*, 416 U.S. 412-13, *limited by Thornburgh*, 490 U.S. 401.

Additionally, Slaughter argues Defendant Westbay refused to give Slaughter an emergency grievance form and when Slaughter turned his grievances into Defendant Westbay, he told Slaughter that Defendant Westbay had unassigned Slaughter from his culinary job in retaliation for him filing the grievances. (ECF No. 6 at 11-12.) Here again, Slaughter has not introduced any evidence to substantiate the claim that Defendant Westbay refused to provide Slaughter with an emergency grievance form. (*See generally* ECF No. 27). Furthermore, the evidence shows Slaughter was removed from his job for assaulting another inmate. (ECF Nos. 21 at Ex. D; Ex. C). Accordingly,

13

this Court recommends that summary judgement be granted as to the retaliation claim against Defendant Westbay.[5]

### IV.  CONCLUSION

Based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be granted. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 21) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: March 22, 2019

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Because the Court has addressed the substance of the claims and found summary judgment appropriate, it need not address qualified immunity. *See Townsend v. Bannister*, 2011 U.S. Dist. LEXIS 151487 *19, 2011 WL 7031091 (D. Nev., July 8, 2011) (finding that the Court need not address qualified immunity where summary judgment was decided on the substance of the claims); *Tribble v. Gibbons*, 2009 U.S. Dist. LEXIS 115319 n*4, 2009 WL 4823388 (D. Dev., Dec. 8, 2009).